# In the United States Court of Federal Claims

No. 18-1083
(Filed: November 8, 2018)*
**\*Opinion originally filed under seal on October 31, 2018**

| | |
|---|---|
| MSC INDUSTRIAL DIRECT CO., INC., | |
| Plaintiff, | Bid Protest; Jurisdiction; Post-award Protest; Judgment on the Administrative Record; Motion to Dismiss; Motion to Supplement; Blue & Gold Waiver; Contract Administration; Motion to Dismiss for Lack of Subject Matter Jurisdiction; RCFC 12(b)(1). |
| v. | |
| THE UNITED STATES, | |
| Defendant, | |
| W.W. Grainger, Inc. | |
| Defendant-Intervenor. | |

*Gregory Roberts Hallmark,* McLean, VA, for plaintiff.

*Jeffrey David Klingman,* Civil Division, United States Department of Justice, Washington, D.C., with whom were *Joseph H. Hunt*, Assistant Attorney General, *Robert E. Kirshman, Jr.*, Director, and *Deborah A. Bynum*, Assistant Director, for defendant. *Alissa Schrider* and *Tyler Mullen*, Assistant General Counsel, Personal Property Division, Office of General Counsel, General Services Administration, Washington, D.C., of counsel.

*Jonathan S. Aronie*, Washington, D.C., for defendant-intervenor.

## OPINION

**FIRESTONE**, *Senior Judge*

This post-award bid protest has been brought by the incumbent contract holder,

MSC Industrial Direct Co., Inc. ("MSC" or "plaintiff"), against the United States General

Services Administration ("GSA" or the "government") in connection with a procurement for industrial supplies and services for the Warner Robins Air Logistics Complex ("Complex"). The awardee, W.W. Grainger Inc. ("Grainger"), intervened without objection on July 27, 2018. (ECF No. 12).  MSC's complaint has two counts. In Count I, MSC claims that GSA acted arbitrarily and capriciously and abused its discretion when it eliminated MSC's quotation ("proposal") from consideration. In Count II, MSC claims that GSA's decision not to cancel and reissue the solicitation after GSA changed its policy on outsourcing was contrary to law. There are now three motions pending before the court in connection with this bid protest: first, MSC's motion to supplement the administrative record with documents relevant to Count II of MSC's complaint (ECF No. 24); second, the parties' cross motions for judgment on the administrative record with regard to Count I of MSC's complaint (ECF Nos. 23, 26, 27); and third, the government's and Grainger's motions to dismiss Count II of MSC's complaint for lack of jurisdiction (ECF Nos. 26, 27).

For the reasons that follow, the court finds that it was not arbitrary and capricious for GSA to eliminate MSC's proposal from consideration for award, and thus, the government's and Grainger's motions for judgment on the administrative record as to Count I are **GRANTED** and MSC's motion for judgment on the administrative record is **DENIED**. MSC's motion to supplement the administrative record is **DENIED**. However, the court will take judicial notice of MSC's Exhibits C and D together with additional documents provided by Grainger and the government for the purpose of determining whether this court has jurisdiction over Count II of MSC's complaint.  With regard to

2

Count II, the court finds that MSC's claims regarding GSA's decision not to cancel or reissue the solicitation have been waived and further that MSC does not have standing to challenge GSA's administration of the contract with regard to outsourcing. Accordingly, the government's and Grainger's motions to dismiss Count II of MSC's complaint are **GRANTED**.

## I.     Factual Background and Procedural History

### A.     GSA's Request for Quotation and Decision to Eliminate MSC's Proposal From Consideration for Award

GSA issued the subject Request for Quotations No. QSRA-RFQ-18001 (the "RFQ"), on January 23, 2018. AR 89. The RFQ was issued to create a Blanket Purchase Agreement ("BPA") through a 4th Party Logistics ("4PL") retail service to provide industrial products and related in-store services to the Complex. AR 91-92. The RFQ was limited to vendors with a GSA Multiple Award Schedule ("MAS") 51V[1] and specific Special Item Numbers ("SIN"). *Id.*[2] As such, the RFQ stated that the RFQ would be conducted under FAR Subpart 8.4.[3] AR 10. The estimated value of the BPA is in excess

---

[1] GSA's office of General Supplies and Services "is responsible for acquisition services and comprehensive supply chain management." *MSC Industrial Direct Co. Inc. v. United States*, 126 Fed. Cl. 525, 528 (2016). It is "designed to provide supply solutions to client organizations." *Id.* MAS, also known as the Federal Supply Schedule ("FSS"), "provides federal agencies with a simplified process for obtaining commonly used commercial supplies and services." *Id.* Schedule 51V is "GSA's Hardware SuperStore" and covers hardware supply needs. 4PL are service providers that have no physical assets of their own, but coordinate the supply chain.

[2] The Special Item Numbers for this RFQ included 105-001 (Hardware Store, Home Improvement Center, or MRO – Store front), 105-002 (Hardware Store, Home Improvement Center, or MRO – Catalogue), and 105-003 (Hardware Store, Home Improvement Center, or MRO – Services). AR 91-92.

[3] FAR Subpart 8.4 regulates the Federal Supply Schedule and "provides Federal agencies . . . with a simplified process for obtaining commercial supplies and services at prices associated with volume buying." FAR 8.402(a).

of $80,000,000 and consists of a 12-month base period with four 12-month option periods. AR 92. Quotes were due on February 26, 2018. AR 9.

The RFQ stated that the "award will be made on a best value basis."[4] AR 53. The RFQ provided that the "[g]overnment intends to evaluate [proposals] and make award without exchanges or communications and therefore, [proposals] shall contain the Vendor's best terms. The Government may at its discretion confer with a Vendor to clarify quote details." AR 53. The solicitation required electronic submissions that contain the entire proposal "within GSA e-Buy at www.ebuy.gsa.gov and/or via electronic mail (email)." AR 51-52.  Other submissions would not "be deemed in conformance with the instructions of this RFQ and accepted." AR 52. "If the quote . . . in its entirety, is not received by GSA by the due date and time as stated in the cover letter, it will be considered late and will neither be opened nor evaluated." *Id.*

Importantly, the RFQ stated that Vendors were required to "[s]ubmit a copy of their current approved MAS subcontracting plan and their latest annual summary subcontract report (SSR, previously, Standard Form (SF) 295)." AR 51. The RFQ stated that this narrative was required so the government could "evaluate the socio-economic merits of each [proposal] and the Vendor's commitment in providing meaningful

---

[4] Specifically, the RFQ stated with regard to "best value" as follows: "The BPA will be established with the Vendor whose quote is the most advantageous to the Government, price and other factors considered. Price quotes will be evaluated in accordance with RFQ Section 12.4, Price Quote Evaluation, (Part I). Technical quotes will be evaluated based on the factors described in Section 12.5, Technical Evaluation Factors (Part II). A narrative adjectival rating system will be used to evaluate technical quotes. Numerical scoring or ranking of quotes will not be performed by the Technical Evaluation Board (TEB). An Award will be made to the vendor whose quote is determined to be the best value for the Government."  AR 53.

subcontracting opportunities for Small Businesses (SBs)." *Id.* The SSR was a component

of one of the technical factors that GSA would evaluate. AR 54-55. For the technical

evaluation, GSA would look to four factors: "Factor 1: System Interface Capabilities . . .

Factor 2: Technical Approach . . . Factor 3: Past Performance . . . Factor 4: Local and

Small Business Participation." *Id.* "Each of the narratives required for Technical

Evaluation Factors 2, 3, and 4 must be provided in the quote. The Government will reject

any quote that does not contain all of the required narratives for Technical Evaluation

Factors 2, 3, and 4 and no ratings will be assigned thereafter." AR 53.

The RFQ repeated the requirement to include an SSR with a proposal. In

particular, the RFQ specified that "all Vendors shall submit [1] A narrative explaining

their Local and Small Business Participation Plan; [2] A copy of their current approved

Multiple Award Schedule (MAS) subcontracting plan; and [3] Their latest annual

summary subcontracting report (SSR)." AR 57. The RFQ stated that "[t]he Government

will review the narratives provided for Factor 4 (See RFQ Section 11.7.6, Tab 'N,'

paragraphs a – d), to ensure each of the required elements have been provided by the

Vendor. [Proposals] that do not provide all required elements will not be evaluated and

will be determined not acceptable." *Id.*[5]

On February 26, 2018, MSC submitted its proposal. AR 224. MSC's technical

proposal included a section titled "Local/Small Business Utilization Narrative" in Tab N.

AR 177. GSA "reviewed [proposals] to ensure that they included all required elements

---

[5] A revised RFQ was issued January 23, 2018, but the aforementioned requirements were not
changed from the initial RFQ. AR 90-91.

identified in the RFQ." AR 5. This review showed "that even though MSC included their MAS 51V Terms and Conditions, MSC's TAB N did not include its latest annual summary subcontracting report (SSR), as required by the RFQ in sections 11.7.6 and 12.5.4." AR 5; AR 51 (section 11.7.6); AR 57 (section 12.5.4); AR 229 (GSA Conformance Check).

On March 28, 2018, GSA issued an evaluation notice seeking information from MSC regarding its SSR. The notice stated:

> In accordance with Section 11.7.6, LOCAL/SMALL BUSINESS UTILIZATION NARRATIVE, section (c), vendors shall submit a copy of their current approved MAS subcontracting plan and their latest annual summary subcontracting report (SSR, previously, Standard Form (SF) 295). Upon reviewing MSC's [proposal] submission and, specifically, Tab N, GSA was unable to locate MSC's latest annual summary subcontracting report (SSR, previously, Standard Form (SF) 295). Please provide the document title name (and/or page number, if applicable), where GSA can locate MSC's latest annual summary subcontracting report (SSR, previously, Standard Form (SF) 295), under MSC's [proposal] submission in response to this RFQ.

AR 230.

MSC acknowledged that it had not submitted its SSR in responding that "GSA can locate MSC's latest annual summary subcontracting report (SSR) through the eSRS.gov system" and that MSC's "latest report was submitted to and acknowledged by [MSC's] GSA Administrative Contracting Officer . . . on November 1, 2017." AR 231. MSC also attached a copy of MSC's SSR for "quick reference" in its response. *Id.*

GSA informed MSC on April 3, 2018 that MSC's proposal "has been excluded from consideration for the subject procurement." AR 235. In the rejection letter GSA stated "[t]he requirement for Vendors to submit a copy of their latest annual summary

subcontracting report (SSR, previously, Standard Form (SF) 295) is cited multiple times in the subject RFQ. The SSR is clearly a required element of the Local/Small Business Utilization Narrative in Section 11.7.6, paragraph c. The requirement to submit an SSR is also repeated in RFQ Section 12.5.4." *Id.* The letter concluded "[i]n accordance with the RFQ, because MSC did not submit a required element, MSC's [proposal] will not be evaluated and has been determined not acceptable." AR 236.

On April 4, 2018, MSC asked GSA to "reconsider this decision and exercise [] discretion under FAR 52.212-1(g)[6] to waive its failure [to include its SSR with its proposal] as a mere 'informality' or 'minor irregularity' in [MSC's] initial [proposal]." AR 238. GSA responded on April 6, 2018 that "[s]ubmission of the SSR is a material requirement that was clearly stated in the RFQ. GSA determined that the SSR is a necessary element that must be submitted in order for GSA to evaluate the BPA Holder's local and small business participation plan. As reiterated in GSA's decision letter, the RFQ made clear that failure to submit the required SSR would render a BPA Holder's [proposal] not acceptable and it would not be evaluated." AR 240. GSA further stated that it is "not accurate" to state that MSC submitted the SSR in the wrong format. *Id.* "MSC's [proposal] did not include . . . the SSR, nor was there any mention of the SSR or

---

[6] "Contract award (not applicable to Invitation for Bids). The Government intends to evaluate offers and award a contract without discussions with offerors. Therefore, the offeror's initial offer should contain the offeror's best terms from a price and technical standpoint. However, the Government reserves the right to conduct discussions if later determined by the Contracting Officer to be necessary. The Government may reject any or all offers if such action is in the public interest; accept other than the lowest offer; and waive informalities and minor irregularities in offers received." FAR 52.212-1(g).

the eSRS system in MSC's proposal. In fact, the first time MSC addressed the required

SSR was in response to GSA's March 28, 2018 clarification" and rejected MSC's

request. *Id.* The letter concludes "[b]ecause MSC failed to provide a material

requirement, GSA decided that, in accordance with the RFQ Section 12.5.4, MSC's

[proposal] is not acceptable and it will not be evaluated." AR 240-41.

On April 13, 2018, MSC filed a protest before the Government Accountability

Office ("GAO") challenging GSA's decision to eliminate MSC from consideration

"merely because MSC did not include a copy of its annual [SSR] in its [proposal]

package." AR 242. On July 12, 2018, the GAO issued its decision denying the protest.

AR 288. The GAO wrote that because "the solicitation stated that vendors must submit

the SSR" and "advised vendors that the agency would reject a [proposal] without

evaluating it if the [proposal] did not include the SSR . . . it was reasonable for the

agency to reject MSC's [proposal]" that did not include an SSR. AR 290-91. GAO also

stated that "there is no requirement in FAR subpart 8.4 that an agency seek clarifications

or otherwise conduct discussions with vendors." AR 291.

### B.     GSA's  MAS 51V Policy Change and 51V Contract Modifications[7]

Section 8.1 of the RFQ stated that "[a]ll clauses contained in the Vendor's MAS

51V contract are hereby incorporated by reference in the BPA" and that "[a]ll the

Vendor's MAS 51V contract terms and conditions are in full force and effect for the

BPA, unless otherwise specified." AR 35.

---

[7] The court, as discussed infra, had taken judicial notice of all of the documents referenced in this
section of the opinion.

The RFQ contained a provision on outsourcing in section 7.8.2. which states:

> During the course of this procurement, the Vendor may be required to provide products that are not currently on the Vendor's GSA MAS 51V contract ("Outsourced products"). For example, if a GSA customer requests a specific item that is not currently on the Vendor's MAS 51V contract, the Vendor may (if approved by GSA) be expected to out-source that item and provide it to the customer. . .
> The Sourcing Percentage is a temporary sourcing cost that the Government will pay for sales of the Outsourced product only until the item is added to the Vendor's MAS 51V contract. . .
>
> The Sourcing Percentage proposed by the Vendor in response to this RFQ is a "cap" (may not be increased, but may be decreased) for the BPA Period of Performance.

AR 33-34.

While MSC's protest at the GAO was pending and in advance of the MAS 51V award to Grainger on July 19, 2018,  GSA contacted MSC, Grainger, and all other 51V-4PL BPA holders on May 31, 2018 to explain that GSA would soon be changing the outsourcing requirements for 51V contracts.  Specifically, the email from the 4PL Acquisition Team Lead at GSA stated:

> The purpose of this email is to address the upcoming changes to the [4PL] Special Item Number (SIN) program which will impact 4PL BPA Holders. In order to support GSA's Strategic Goals for FY-18-20, and in order to ensure items are purchased in accordance with FAR 8.4, GSA conducted a review of business processes to include the outsourcing component of GSA Multiple Award Schedule (MAS) 51V. Based upon this review, the determination was made that the 4PL program is no longer in a position to support the outsourcing element of MAS 51V. Further guidance related to MAS contract-level impact will be forthcoming. . . .
>
> Beginning on July 9, 2018, items that customers require to be added to a vendor's contract can only be processed and approved by the Region 6 via eMod, prior to being offered through the 4PL BPA. . .
>
> Beginning on October 1, 2018, items cannot be sold through the vendors' 4PL BPA unless the item has been added via an eMod to the contractor's

> over-arching 51V schedule. All items that the vendor wishes to continue
> selling through the 4PL program that have been added to the BPA level
> (i.e., to SIN 105-001), must be added to the contractor's over-arching MAS
> 51V schedule by October 1, 2018. 4PL vendors are encouraged to begin the
> eMod process immediately to add these items as soon as possible, so that
> odering for those items can continue after October 1, 2019.

Def-Intervenor's Mot. for J. on the Admin. Rec. ("Grainger's MJAR") Ex. A (ECF No.

29-2 at 2).

On July 2, 2018, GSA's 4PL Acquisition Team Lead sent MSC, Grainger, and all

other 51V- 4PL contract holders another email about the impending 51V outsourcing

policy change. That email included a GSA power point presentation titled "Schedule 51V

– SIN 105 003 Update." Pl.'s Mot. for J. on the Rec. ("Pl.'s MJAR") Ex. C at 3 (ECF No.

23-2 at 11). The presentation stated "[m]any industry partners have 'outsourcing' services

on their Schedule 51V contract with a mark-up." *Id.* at 4 (ECF No. 23-2 at 12). It went on

to provide information about another GAO protest where the GAO held that the GSA

may not "order products not listed on a contractor's scheduled contract." *Id.* at 5 (ECF

No. 23-2 at 13). In light of the GAO decision, the GSA presentation stated that GSA had

agreed "that outsourcing as currently performed must cease." *Id.* Additionally, the

presentation explained that "GSA will be issuing unilateral [contract] modifications

removing outsourcing from all contracts with SIN 105 003." *Id.* at 6 (ECF No. 23-2 at

14).

On July 13, 2018, the day after the GAO denied MSC's protest but before the

BPA was awarded to Grainger, GSA sent another email to MSC and Grainger entitled

"Schedule 51V – Update on Outsourcing." Pl.'s MJAR Ex. D at 1 (ECF No. 23-2 at 24).

The email again stated "GSA can no longer support outsourcing as it is being used." *Id.*

10

The email said "[w]e understand this is a big change. There are some alternatives for customers to use in lieu of outsourcing." *Id.* The email went on to say GSA "will be sending out a unilateral modification late the week of July 16, 2018 that removes outsourcing from the contract effective 30 days from the date the modification is issued." *Id.* at 2 (ECF No. 23-2 at 25).

On July 19, 2018, GSA awarded the contract to Grainger. AR 21833. The next day, GSA issued the BPA to Grainger. AR 21834. The BPA issued to Grainger contained the outsourcing provision from the RFQ. *See* AR 21839 ("Vendor may be required to provide products that are not currently on the Vendor's MAS 51V contract"); AR 21859 (" if a GSA customer requests a specific item that is not currently on the Vendor's MAS 51V contract, the Vendor may (if approved by GSA) be expected to out-source that item and provide it to the customer").

Subsequent to the award, on August 12, 2018, GSA issued a contract modification to schedule 51V contracts. Pl.'s MJAR Ex. H (ECF 23-2 at 159). In an email to MSC, Grainger, and other 51V contract holders, GSA stated that "[o]utsourcing or the purchasing/sale/provision of any items not specifically identified and awarded on a vendor's Schedule contract via an ordering service such as special order or product find, is not allowed." *Id.* The August 12, 2018 modification was rescinded by another GSA modification issued on September 13, 2018 which stated that outsourcing in 51V contracts would be prohibited as of October 13, 2018. Appx 7 (ECF No. 39 at 1). Then, on October 13, 2018, GSA issued another modification rescinding the September 13, 2018 modification. Under the terms of the October 13, 2018 modification to the 51V

11

contracts, outsourcing under 51V contracts will be prohibited after January 18, 2019.

Appx 10 (ECF No. 39 at 4).  No modification has been issued to Grainger regarding the

BPA and outsourcing. At oral argument, the government explained that no modification

to Grainger's BPA will be issued. The government does not see a conflict between the

BPA and the 51V contracts that govern the BPA on the grounds that all outsourcing

under the BPA must be approved by GSA. Oral Argument at 15:32:38-15:33:10.

### C.    Litigation History

MSC filed the present action on July 25, 2018 and its motion for judgment on the

administrative record on August 17, 2018 together with its motion to supplement the

administrative record. Pl.'s Compl. (ECF No. 1); Pl.'s MJAR (ECF No. 23). In its

motion, MSC argues regarding Count I of its complaint that "GSA's decision to eliminate

MSC from consideration for award was arbitrary and capricious." Pl.'s Compl. ¶ 44.

MSC argues with regard to Count II of its complaint that the "RFQ [is] contrary to law

and cannot properly form the basis for the award of a BPA" on the grounds that GSA is

modifying the 51V contracts to prohibit outsourcing.  Pl.'s Compl. ¶ 70. In such

circumstance, MSC  argues that GSA must lawfully cancel the BPA award to Grainger

and issue a new solicitation.

On August 31, 2018, the government and Grainger filed their cross-motions for

judgment on the administrative record for Count I and motions to dismiss Count II of

MSC's complaint under 12(b)(1) of the Rules of the United States Court of Federal

Claims ("RCFC") for lack of subject-matter jurisdiction. With regard to Count II, the

government and Grainger argue that MSC's challenge to the RFQ on the grounds that it

is inconsistent with GSA's change to the 51V contracts is untimely because it was not filed before the BPA was awarded. They argue on the merits that the BPA is not inconsistent with GSA's 51V contract changes on outsourcing and that to the extent MSC contends that the BPA cannot be performed without outsourcing the issue is one of contract administration that cannot be heard as a bid protest under Section 1491(b)(1). Def.'s Mot. for J. on the Admin. Rec. ("Def.'s MJAR") (ECF No. 26); Grainger's MJAR (ECF No. 29). After all briefing was completed, oral argument was held on October 23, 2018.

## II.    Legal Standards

### A.    Motion for Judgment on the Administrative Record

This court exercises jurisdiction over MSC's post-award bid protest pursuant to 28 U.S.C. § 1491(b). In a bid protest, the court applies the standards set forth in 5 U.S.C. § 706, and may only set aside an award if the agency's action was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *Palladian Partners, Inc. v. United States*, 783 F.3d 1243, 1252 (Fed. Cir. 2015) (quoting *Savantage Fin. Servs. v. United States*, 595 F.3d 1282, 1285 (Fed. Cir. 2010)). An agency's decision is arbitrary and capricious where the agency "entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or [the decision] is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Ala. Aircraft Indus., Inc. v. United States*, 586 F.3d 1372, 1375 (Fed. Cir. 2009) (quoting *Motor Vehicle Mfrs. Ass'n v. State Farm Auto. Ins. Co.*, 563 U.S. 29, 43 (1983)).

"This standard is 'highly deferential.'" *Sims v. United States*, 125 Fed. Cl. 119, 129-30, (quoting *Advanced Data Concepts, Inc. v. United States*, 216 F.3d 1054, 1058 (Fed. Cir. 2000), *aff'd*, 655 F. App'x 826 (Fed. Cir. 2016)). "The court's task is to determine whether '(1) the procurement official's decision lacked a rational basis; or (2) the procurement procedure involved a violation of regulation or procedure.'" *Palladian Partners, Inc.*, 783 F.3d at 1252 (quoting *Savantage*, 595 F.3d at 1285-86). "[W]hen such decisions have a rational basis and are supported by the record, they will be upheld." *NCL Logistics Co. v. United States*, 109 Fed. Cl. 596, 610 (2013) (quoting *Bender Shipbuilding & Repair Co. v. United States*, 297 F.3d 1358, 1362 (Fed. Cir. 2002)). In short, the "disappointed bidder bears a heavy burden of showing that the award decision had no rational basis." *Colonial Press. Intern., Inc. v. United States*, 788 F.3d 1350, 1355 (Fed. Cir. 2013) (quoting *Centech Grp., Inc. v. United States*, 554 F.3d 1029, 1037 (Fed. Cir. 2009)). Thus, in procurement decisions, a protestor can prevail only "when it is clear that the agency's determinations are irrational and unreasonable." *Orion Tech., Inc. v. United States*, 704 F.3d 1344, 1351 (Fed. Cir. 2013) (citing *R & W Flammann Gmbh v. United States*, 339 F.3d 1320, 1322 (Fed. Cir. 2003)).

### B.    Motion to Dismiss Due to Subject Matter Jurisdiction

The standards upon which motions to dismiss for lack of subject matter jurisdiction can be granted are well-settled. *McKuhn v. United States*, No. 18-107C, 2018 WL 2126909, at *2 (Fed. Cl. May 9, 2018). The plaintiff has to establish the court's subject matter jurisdiction by a preponderance of the evidence. *Fid. & Guard. Ins. Underwriters, Inc. v. United States*, 805 F.3d 1082, 1087 (Fed. Cir. 2015) (citing *Brandt

14

*v. United States*, 710 F.3d 1369, 1373 (Fed. Cir. 2013)). "In deciding a motion to dismiss for lack of subject matter jurisdiction, the court accepts as true all uncontroverted factual allegations in the complaint, and construes them in the light most favorable to the plaintiff." *Estes Exp. Lines v. United States*, 739 F.3d 689, 692 (Fed. Cir. 2014). Additionally, the court can "look beyond the pleadings and 'inquire into jurisdictional facts' to determine whether jurisdiction exists." *BRC Lease Co. v. United States*, 93 Fed. Cl. 67, 71 (2010) (quoting *Rocovich v. United States*, 933 F.2d 991, 993 (Fed. Cir. 1991)).

### 1.      Blue & Gold Waiver Standard

Here, the government and Grainger have moved to dismiss Count II of MSC's complaint - regarding the need to cancel and re-solicit the BPA- on the ground that MSC has waived this claim under the standards set by the Federal Circuit's decision in *Blue & Gold Fleet, L.P., v. United States*, 492 F.3d 1308, 1313 (Fed. Cir. 2007) and *COMINT Systems Corporation v. United States*, 700 F.3d 1377, 1382 (Fed. Cir. 2012). In *Blue & Gold*, the Federal Circuit stated that "a party who has the opportunity to object to the terms of a government solicitation containing a *patent* error and fails to do so prior to the close of the bidding process waives its ability to raise the same objection subsequently in a bid protest action in the Court of Federal Claims." *Id*. Patent defects are those that "could have been 'discovered by reasonable and customary care.'" *Per Aarsleff A/S v. United States*, 829 F.3d 1303, 1313 (Fed. Cir. 2016) (quoting *Analytical & Research Tech. Inc. v. United States*, 39 Fed. Cl. 34, 46 (1997)). The Federal Circuit has expanded the reasoning of *Blue & Gold* "to all situations in which the protesting party had the

opportunity to challenge a solicitation before the award and failed to do so." *COMINT*, 700 F.3d at 1382. The Federal Circuit has stated that "[u]nless the basis for the protest becomes apparent later than ten days before the award," the protester will not be permitted to wait until after the award. *COMINT*, 700 F.3d at 1383.

### 2.     Limitations of Section 1491(b)(1) with Regard to Contract Administration

Section 1491(b)(1) grants this court jurisdiction: "to render judgment on an action by an interested party objecting to a solicitation by a Federal agency for bids or proposals for a proposed contract or to a proposed award or the award of a contract or any alleged violation of statute or regulation in connection with a procurement or proposed procurement." A claim must only be a "non-frivolous allegation of a statutory or regulatory violation in connection with a procurement." *Distributed Sol.'s., Inc. v. United States*, 539 F.3d 1340, 1345 n.1 (Fed. Cir. 2008). In this connection, claims associated with "the adjustment or interpretation of contract terms, or other relief relating to the contract" are usually governed by the Contract Disputes Act ("CDA"). *Todd Constr. L.P. v. United States*, 656 F.3d 1306, 1311 (Fed. Cir. 2011) (citing 48 C.F.R. § 2.101). Contract administration claims are thus outside the jurisdictional grant provided for under Section 1491(b)(1).

### C.     Standards for Supplementing the Administrative Record

The general "focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court." *Camp v. Pitts*, 411 U.S. 138, 142 (1973). With regard to bid protests, the Federal Circuit has stated

that "[t]he purpose of limiting review to the record actually before the agency is to guard against courts using new evidence to 'convert the "arbitrary and capricious" standard into effectively de novo review.'" *Axiom Res. Mgmt., Inc. v. United States*, 564 F.3d 1374, 1380 (Fed. Cir. 2009) (quoting *Murakami v. United States*, 46 Fed. Cl. 731, 735 (2000), *aff'd*, 398 F.3d 1342 (Fed. Cir. 2005). Supplementing the administrative record "should be limited to cases in which 'the omission of extra-record evidence precludes effective judicial review.'" *Id.*  Courts also may take "judicial notice of facts that are 'capable of accurate and ready determination by resort to sources whose accuracy cannot be reasonably questioned.'"  *Glob. Comput. Enters., Inc. v. United States*, 88 Fed. Cl. 52, 70 n.30 (2009) (citing Fed. R. Evid. 201(b)). But taking judicial notice is not a means "to circumvent the established rule requiring review in cases such as this to be based on the administrative record developed by the agency whose decision is being reviewed." *Murakami* 46 Fed. Cl. at 739, *aff'd*, 398 F.3d 1342 (Fed. Cir. 2005). Where, however, it is necessary to consider facts outside the record to determine jurisdiction, the court may do so. *Cedars Sinai Med. Ctr. v. Watkins*, 11 F.3d 1573, 1584 (Fed. Cir. 1993).

## III.   DISCUSSION

The court will address the motions briefed in the following order. First, the court will consider the arguments associated with the cross- motions for judgment on the administrative record with regard to Count I. Second, the court will discuss MSC's motion to supplement the administrative record and then the issues surrounding the government and Grainger's motions to dismiss Count II.

### A.    GSA's Elimination of MSC's Proposal from Consideration was not Arbitrary or Capricious nor an Abuse of Discretion

The court turns first to the issue of whether GSA acted rationally when it eliminated MSC's proposal from consideration on the grounds that MSC failed to include a copy of its latest SSR in its proposal, as required by the RFQ. MSC argues that it was arbitrary and capricious or an abuse of discretion to eliminate MSC's proposal for lack of SSR for three reasons. First, MSC argues that the requirement to submit the SSR with the proposal was not a material element of the procurement and thus GSA was arbitrary and capricious and abused its discretion by failing to waive the requirement for an SSR. Second, MSC argues that GSA acted arbitrarily by failing to specifically consider whether the SSR submission requirement should have been waived. Third, MSC argues that regardless of whether the requirement was material and could not be waived, GSA was arbitrary and capricious and abused its discretion by failing to allow MSC to provide the missing SSR through clarifications under FAR § 15.306(a). MSC argues that because the SSR was available to the government, MSC should have been given the opportunity to fix its proposal. In response, the government and Grainger argue that the SSR requirement was material to the procurement because it was a required element under the RFQ and because the SSR was necessary to evaluate MSC's use of subcontractors during the previous 12-month period. They argue in such circumstance GSA had no basis for waiving or considering to waive the SSR requirement for MSC. They also argue that GSA did not have a legal basis to allow MSC to fix its proposal by providing a material requirement after the submission deadline. Thus, the government and Grainger argue

18

GSA's elimination of MSC from consideration for award was not arbitrary or capricious and must stand.

### 1.    The SSR Submission was Material

Whether or not a requirement in an RFQ is material turns on the definition of "material elements" under FAR § 52.212-1(g). Under FAR § 52.212-1(g) material elements are those necessary for a proposal to "represent an offer to provide the exact thing called for in the request for proposals." *Bus. Integra, Inc. v. United States*, 116 Fed. Cl. 328, 333 (2014) (quoting *Centech Grp., Inc. v. United States*, 554 F.3d 1029, 1037 (Fed. Cir. 2009)). Explicit statements in the solicitation about what is material receive particular weight. *Id.* at 335. Additionally, omissions in proposals are material omissions when the excluded information is "important to the government's evaluation of the offer." *Id.* at 334 (referencing *St. Net, Inc. v. United States*, 112 Fed. Cl. 99, 109-110 (2013)). For example, in *Business Integra, Inc.*, this court found omitting price information was a material omission. *See* 116 Fed. Cl. at 335; *see also Strategic Bus. Sol'n, Inc. v. United States*, 129 Fed. Cl. 621, 629 (2016) (holding that the requirement to redact parts of a proposal was material because it "served a substantive purpose"), *aff'd*, 711 Fed. Appx. 651 (2018).

Based on these standards the court agrees with the government and Grainger that the requirement to submit the SSR was material on both of the above-stated grounds. First, there is no question that offerors had to include their SSR in their proposal by the express terms of the RFQ. In this regard, this case is similar to *Business Integra*. In that case, the protestor had failed to include certain prices in its proposal and argued that "its

errors were *de minimis* because the omitted prices would have amounted to only 0.0041%

of the projected Total Value of its proposal." 116 Fed. Cl. at 334. The court found the

protestor's argument "at odds with the [] solicitation, which explicitly states that

omission of even a single labor rate, no matter its significance will result in a material

non-conformity." *Id.* at 335 (internal quotations omitted). Here, MSC's argument, like the

protestor's argument in *Business Integra,* must also fail because the RFQ clearly required

the offeror to provide a copy of their latest SSR in several places. AR 51 ("Vendors shall

. . . Submit a copy of their current approved MAS subcontracting plan and their latest

annual [SSR]"); AR 57 ("all Vendors shall submit . . . their latest annual [SSR]").

Importantly, the RFQ stated that "[t]he Government will reject any quote that does not

contain all of the required narratives for Technical Evaluation . . . ." AR 53-54. Where, as

here, the solicitation contained a clear requirement for submission of the SSR as part of

the required narrative for the technical evaluation together with a clear statement that

omitting any requirement will result in rejection of the proposal without evaluation, the

court finds that the SSR requirement was material and thus could not be simply waived.

The court also finds that the SSR requirement was material because, contrary to

MSC's contentions, the SSR was needed for GSA's technical evaluation process. MSC

contends that "[i]ncluding a copy of the SSR in the [proposal] submission would not have

changed the terms of MSC's [proposal] and would have no effect on its price, quality, or

delivery." Pl.'s MJAR at 23. The government argues in response that the SSR was

material "because without the SSR, GSA has no way to determine whether or not the

subcontracting opportunities submitted in MSC's small business participation plan are

actually practical and thus, the agency could not 'fully evaluate the Vendors' local and

small business participation plans to the standard required in the RFQ." Def.'s Reply at 9

n.4 (citing AR at 7) (ECF No. 35). The RFQ also indicated that "[t]he Government will

evaluate the socio-economic merits of each [proposal]" and that the "policy of the

Federal Government [is] to encourage the full participation of small businesses in the

procurement process." AR 132.  For these reasons as well, the court agrees with the

government and Grainger that the SSR requirement was material for GSA's review.  In

determining whether the SSR was important to the government's evaluation and interests,

the court gives deference to the agency's statements supported by the RFQ. *See NCL*

*Logistics Co. v. United States*, 109 Fed. Cl. 596, 610 (2013) (quoting *Bender*

*Shipbuilding & Repair Co. v. United States*, 297 F.3d 1358, 1362 (Fed. Cir. 2002))

(upholding decisions "supported by the record"). Here, the RFQ explained that "[t]he

Government will evaluate the socio-economic merits of each [proposal]" and the "policy

of the Federal Government [is] to encourage the full participation of small businesses in

the procurement process."  AR 93. As such, GSA could not simply ignore the SSR

requirement.

In view of the foregoing, MSC's reliance on FAR § 14.405 to suggest that GSA

should have waived the SSR requirement or considered waiving it is misplaced.[8] Courts

---

[8] Importantly, FAR § 14.405, which is applicable to sealed bidding processes, does not govern
this procurement which is governed by FAR Part 8.4. *See* AR 20; *Strategic Bus. Sols., Inc. v.
United States*, 129 Fed. Cl. 621, 629 (2016) (finding that FAR § 14.405's requirement for
agencies to waive minor informalities is not applicable to a procurement governed by FAR Part
12 and 15), *aff'd*, 711 Fed. Appx. 651 (2018). This means that even if MSC's omission was a

have looked to FAR § 14.405 by analogy in cases involving errors in offeror's proposals under other FAR provisions. FAR § 14.405 states that a "minor informality or irregularity is one that is merely a matter of form and not of substance. It also pertains to some immaterial defect[s] in the bid . . . that can be corrected or waived without being prejudicial to other bidders." FAR § 14.405. Section 14.405 further provides several examples of minor informalities including the failure to "(a) return the number of copies of signed bids required by the invitation; (b) furnish required information concerning the number of its employees; (c) sign its bid, but only if (1) the unsigned bid is accompanied by other material indicating the bidder's intention to be bound by the unsigned bid . . . ." *Id.*

Looking to FAR § 14.405 by analogy, two points are clear. First, courts have only held that omissions of immaterial provisions can be minor informalities. *See Hawaiian Dredging Constr. Co. v. United States*, 59 Fed. Cl. 305, 316 (2004) (holding that a non-original signature can be minor informality under FAR § 14.405); *AABCO, Inc. v. United States*, 3 Cl. Ct. 109, 117-19 (1983) (finding that omission of leading zeros in rate information was immaterial when determining the value of the rate). This is consistent with the language in FAR § 14.405 that refers specifically to the waiver of "immaterial defect[s]." As discussed above, MSC's defect cannot be considered an omission of an immaterial provision. Second, contrary to MSC's contentions, MSC's omission is unlike the minor informalities listed in FAR § 14.405. This is not a case where MSC submitted a

---

minor informality under Section 14.405, GSA would not have been legally obligated to waive MSC's omission.

complete proposal but in the wrong format. *See Elec. On-Ramp, Inc. v. United States*, 104 Fed. Cl. 151, 167 (2012). In *Electronic On-Ramp*, the solicitation required submission of bids by email, paper, and compact disc. 104 Fed. Cl. at 156. The protestor had submitted an entire proposal by email but did not submit the paper and compact disc on time. *Id.* 156-57. The court concluded "that the timely submission of one complete copy of a proposal via an accepted transmission method can satisfy the requirement for timely delivery." *Id.* at 167; *See also A & D Fire Protection, Inc. v. United States*, 72 Fed. Cl. 126, 139 (2006) (holding that even if the protestor had submitted a material element by fax, that would not have been a completed solicitation where faxing was not permitted by the solicitation because "[p]roposals submitted by means forbidden by a solicitation's terms must be rejected"). Similarly, in *T Square Logistics Services Corporation v. United States*, 134 Fed. Cl. 550, 559 (2017), which MSC relies on, the protestor submitted a proposal online where the solicitation called for physical submission and the court emphasized the fact that the online submission was in itself complete.

In making its argument that MSC's "[o]mission of the SSR was merely a matter of form and not substance because GSA already had easy access to the document," MSC contends that its proposal was in essence complete upon delivery because the SSR was available on eSRS and submitted to MSC's GSA contracting agent. Pl.'s Reply at 7 (ECF No. 30). However, neither eSRS nor past submissions to a contracting agent were accepted means of delivery under the terms of the RFQ nor did MSC did indicate in its proposal that the SSR was available online. The solicitation explicitly required electronic submissions that contain the entire proposal "within GSA e-Buy at www.ebuy.gsa.gov

and/or via electronic mail (email)." AR 51-52.  The GSA Contracting Officer for the procurement never received a completed submission in any form unlike in *T Square Logistics* and *Electronic On-Ramp*. Instead, GSA received a submission lacking a required narrative with no mention as to where GSA could find it. Nor did the government officials in GSA's contracting office for this solicitation have easy access to eSRS. AR 7.[9] In short, because GSA did not have a complete proposal from MSC before the deadline for proposals this is not a case where the agency is elevating form over substance. For this reason, the court finds that GSA's decision to eliminate MSC's proposal was not arbitrary or capricious nor an abuse of discretion.

### 2.     GSA Considered Whether the SSR Omission was Waivable

MSC's contention that GSA erred by failing to consider waiving the SSR submission requirement is not supported. MSC argues that that GSA's decision was arbitrary and capricious or an abuse of discretion because "[t]here is no evidence that GSA even knew that it had the choice between rejection and waiver of the omission." Pl.'s Reply at 2. MSC further argues that, because there were only two competitors, "GSA needlessly deprived itself – and taxpayers – of the benefits of competition." Pl.'s MJAR 18. In support of this argument, MSC relies again on this court's decision in *T Square Logistics*. 134 Fed. Cl. at 559. In *T Square Logistics*, the court overturned an agency's rejection of a proposal on the grounds that the agency "wholly failed to address

---

[9] At oral argument, MSC also suggested that treating the submission of the SSR as a material requirement was a problem with the solicitation. Oral Argument 14:18:40-14:19:06. MSC has clearly waived this challenge under *Blue & Gold Fleet, L.P.*, 492 F.3d at 1313.

the possibility of waiver" when the agency articulated why it was rejecting the protestor's proposal. *Id.* The court found the absence of analysis on waiver "particularly glaring in light of email correspondence from the contract specialist indicating that the agency would waive its strict adherence to the submission format or the delivery deadline." *Id.* The court took issue with the fact that the agency "apparently exercised its discretion in the first instance only to reverse its position without an explanation of why it changed its view on the specific matter of appropriateness of a waiver." *Id.*

In this case, the Contracting Officer responded to MSC's request "that GSA exercise discretion under FAR § 52.212-1(g) to waive MSC's failure to submit the [SSR] with its [proposal] as a mere informality or minor irregularity." AR 240. GSA responded that because the SSR was a material requirement, MSC's submission was "not acceptable." AR 241. In such circumstance, the question of waiver was considered and rejected by GSA. Furthermore, MSC's argument regarding the limited number of competitors has no merit. The number of competitors does not affect whether submissions are complete or whether submission of an SSR was material. *T Square Logistics* is clearly distinguishable and does not serve as a basis for overturning the agency's rejection of MSC's proposal.

### 3.   GSA was not Required to Allow MSC to Fix Its Mistake with a Clarification

The court also rejects MSC's contention that GSA was arbitrary and capricious and abused its discretion by failing to give MSC the opportunity to fix its failure to submit its SSR through some form of clarification.  Contrary to MSC's argument, GSA

had no legal obligation to seek a clarification from MSC which would amount to fixing MSC's failure to submit its SSR. MSC's reliance on FAR § 15.306(a) to argue that GSA should have allowed such a clarification is without merit. To begin, FAR § 15.306(a) is inapplicable here. The record indicates that the procurement was governed by FAR Part 8.4. AR 10. Even if "some procedures also present in Part 15 are utilized," procurements conducted under Subpart 8.4 are treated differently than those conducted under Part 15. *Sys. Plus, Inc. v. United States*, 68 Fed. Cl. 206, 211 (2005). Indeed, "FAR 8.404(a) specifically states that FAR Part 15 does not apply to such [FSS] procurements." *Unisys Corp. v. United States*, 89 Fed. Cl. 126, 140 (2009). In *Distributed Solutions, Inc. v. United States*, 106 Fed. Cl. 1, 15 (2012), this court found that even where the agency engaged in some discussions, that "did not mean [the agency] had to comply with the strict procedures of FAR Part 15." FAR Part 15 does not control this procurement and FAR § 15.306(a) is inapplicable.

Additionally, MSC has not identified any provision of the solicitation that incorporates the language of FAR § 15.306(a). To the contrary, the solicitation states that "[t]he Government intends to evaluate [proposals] and make award without exchanges or communications." AR 53. The RFQ goes on to state that "[t]he Government *may at its discretion* confer with a Vendor to clarify quote details." *Id.* (emphasis added). Therefore, the court finds that GSA was not under a duty to allow MSC to correct its mistake through a "clarification."

Assuming arguendo that FAR § 15.306 was applicable to this procurement, it still would not mandate that GSA allow MSC to submit its SSR as a clarification. "This court

has repeatedly recognized the permissive nature of [FAR § 15.306] in the context of negotiated procurements." *St. Net, Inc. v. United States*, 112 Fed. Cl. 99, 111 (2013). This is especially true where the solicitation explains that proposals should contain accurate and complete information and will be rejected if not complete. *Id.* at n.23. "Clarifications" are reserved for only minor administrative errors and not material omissions. Here, the court agrees with the government that the SSR omission was material and could not have been addressed through a clarification. Therefore, GSA's actions were not arbitrary, capricious, or not in accordance with law.

**B.    The Change in 51V Contracts and Its Impact on the Procurement Process**

In addition to challenging GSA's decision to eliminate MSC's proposal from consideration based on the failure to submit its SSR, MSC also argues that the award to Grainger must be set aside because GSA's recent decision to prohibit outsourcing under its 51V contracts mandated that the subject solicitation be cancelled and a new solicitation issued. Specifically, MSC argues that a new solicitation is necessary because the outsourcing requirements and related evaluation criteria in the RFQ are no longer applicable and are in conflict with the underlying Schedule 51V contracts. Pl.'s MJAR at 15.  MSC maintains that a new solicitation is necessary because the "agency may not properly award a contract with the intent to materially alter it after award." Pl.'s Reply at 24; *see also* Pl.'s Compl. ¶ 76 ("Because the removal of outsourcing is a material change to the requirements, CICA requires that GSA conduct a competition for the revised requirements."). MSC argues that a new solicitation is specifically needed here  because

"Grainger cannot comply with the BPA's requirement that the awardee provide 'a total solution for industrial products' available under 51V." Pl.'s MJAR at 30.

The government and Grainger argue that before the court may examine the merits of MSC's contentions, it must first determine whether it has jurisdiction to consider these claims. First, the government argues that MSC has waived its claims regarding whether the subject solicitation should be cancelled to account for the new restrictions on outsourcing because it failed to timely raise this objection to the solicitation before it was awarded to Grainger under *Blue & Gold Fleet, L.P. v. United States*, 492 F.3d 1308 (Fed. Cir. 2007) and *COMINT System Corporation v. United States*, 700 F.3d 1377 (Fed. Cir. 2012). Second, the government argues that to the extent MSC is challenging Grainger's ability to meet the requirements of the award without having to outsource, contrary to the new policy, MSC's challenge is outside this court's bid protest jurisdiction on the grounds that this challenge goes to matters of contract administration. The government argues that MSC cannot challenge matters of contract administration using the court's bid protest jurisdiction.

### 1.    Motion to Supplement the Record

Before turning to the government and Grainger's motion to dismiss, the court will first turn to MSC's motion to supplement the record which MSC contends contains records that establish the court's jurisdiction. MSC seeks to supplement the administrative record or have the court take judicial notice of several documents relating to the GSA's 51V outsourcing policy change. MSC seeks to add seven documents to the

record.[10] The government and Grainger also reference a May 31, 2018 email, extrinsic to the record, to show when MSC was first aware of the 51V outsourcing policy change. Grainger's MJAR Ex. A.

As discussed above, it is well-settled in this court with regard to bid protests that the court's review is limited to the administrative record before the agency unless supplementing the record is needed for effective judicial review. *Axiom Res. Mgmt., Inc. v. United States*, 564 F.3d 1374, 1380 (Fed. Cir. 2009) (quoting *Murakami v. United States*, 46 Fed. Cl. 731, 735 (2000), *aff'd*, 398 F.3d 1342 (Fed. Cir. 2005)). It is also well-settled, separate from the issue of supplementation, that the court can consider extra-record evidence to determine whether it has jurisdiction. *Cedars Sinai Med. Ctr. v. Watkins*, 11 F.3d 1573, 1584 (Fed. Cir. 1993) ("In establishing the predicate jurisdictional facts, the court . . . may review evidence extrinsic to the pleadings."); *Haas v. United States*. 107 Fed. Cl. 1, 4-5 (2012) ("When ruling upon a motion to dismiss for lack of subject matter jurisdiction, the court may examine relevant evidence in order to decide any factual disputes.").

---

[10] Those seven documents are: Exhibit B is an affidavit by a senior manager about the extent of outsourcing in MSC's previous contract for the Warner Robins Air Logistics Complex. ECF 23-2 at 5-7. Exhibit C is a July 2, 2018 communication from the GSA Contracting Officer with an attached presentation indicating the impending change in Schedule 51V contracts. ECF 23-2 at 8-22. Exhibit D is a July 17, 2018 email also discussing the change in 51V contracts. ECF 23-2 at 23-26. Exhibit E is an original RFQ for another contract ("ServMart RFQ") that involves 51V contractors. ECF 23-2 at 27-93. Exhibit F is a June 8, 2018 notification that the ServMart RFQ has been protested pre-award and GSA intends to cancel and revise the ServMart RFQ. ECF 23-2 at 94-95. Exhibit G is the amended ServMart RFQ issued on June 28, 2018. ECF 23-2 at 96-157. Exhibit H is the August 12, 2018 unilateral modification of 51V contracts to prohibit outsourcing. ECF 23-2 at 158-164.

After careful review, the court finds that in order to determine whether it has jurisdiction over Count II of MSC's complaint it is necessary for the court to consider evidence outside the record. The court will consider all the following documents regarding GSA's communications to MSC regarding the 51V policy change on outsourcing. Specifically, the court will consider Exhibits C and D to MSC's motion for judgment on the administrative record. Exhibit C is the July 2, 2018 communication from the GSA Contracting Officer to all 51V contractor holders with an attached presentation indicating the impending change in Schedule 51V contracts. ECF 23-2 at 8-22. Exhibit D is the July 17, 2018 email discussing the change in 51V contracts. ECF 23-2 at 23-26. In addition, the court will take judicial notice of the May 31, 2018 email to MSC, Grainger and the other 4PLs explaining the pending change to the 51V outsourcing policy which is attached as Exhibit A to Grainger's motion for judgment on the administrative record. Grainger's MJAR Ex. A. Finally, the court will also consider the various 51V contract modifications and GSA's decisions to withdraw those modifications in September and October 2018. Def.'s Appx at 10-12.

> **2.    MSC Knew of Any Alleged Conflict Between the RFQ and the Proposed 51V Contract Modifications on Outsourcing Before the BPA was Awarded**

In *Blue & Gold*, the Federal Circuit held, as discussed above, that an offeror who had the opportunity to timely object to an obvious error in the terms of a solicitation, but failed to do so before the date proposals are due, waived the right to challenge that same error in a subsequent bid protest. 492 F.3d at 1313. In *COMINT Systems Corporation*, the Federal Circuit extended *Blue & Gold* to apply to all pre-award situations where the

protesting party had the opportunity to challenge a solicitation before the award but failed to do so. 700 F.3d at 1378. In *COMINT*, the case turned on when the protester became aware of the patent error or ambiguity. *Id.* at 1382 ("Here, Comint does not claim to have been unaware of the alleged defect . . . prior to the award of the contract."). In this case, the government argues that once MSC learned on May 31, 2018 that GSA was planning to change its outsourcing requirements for 51V contracts holders MSC had to timely challenge the alleged conflict with the RFQ or waive its right to do so.[11]

MSC makes several arguments in response to the government's contention that MSC waived its right to object. First, MSC argues that *Blue & Gold* is inapplicable because *Blue & Gold* only refers to challenges of defects in solicitations that are apparent prior to the submission of proposals. Pl.'s Reply at 12. Here, MSC argues, the error in the RFQ only became apparent after the submission of proposals because the notification of impending changes to 51V contracts came after the submission of proposal deadline. Second, MSC argues that *COMINT* is inapplicable because it only covers situations where an agency legally amends the solicitation after the proposal date. *Id.* at 13. MSC cites two cases where *COMINT* was held to bar claims where the solicitation was amended after the proposal date. *Id.* (citing *N.E. Constr., Inc. v. United States*, 119 Fed. Cl. 596, 610 (2015); *Sotera Def. Sols., Inc. v. United States*, 118 Fed. Cl. 237, 253-54

---

[11] Because the early notice of the intended change of 51V policy given to MSC in the May 31, 2018 email and the July 2, 2018 email occurred well before the July 19, 2019 BPA award, this case does not implicate the standard articulated by the Federal Circuit that a claim is not waived when "the basis for the protest becomes apparent later than ten days before the award." *COMINT Sys. Corp. v. United States*, 700 F.3d 1377, 1383 (Fed. Cir. 2012).

(2014)). In this case, MSC argues the RFQ was not changed and the conflict arose because of a change in general GSA policy separate from any individual solicitation. Finally, MSC argues that had it brought a challenge to the solicitation based on the new 51V policy it would have been dismissed as premature. *Id.* at 15-16. At oral argument, MSC stated that the claim only became ripe on August 12, 2018 when GSA first modified the underlying 51V contracts. Oral Argument 15:11:40-15:12:08.

The court finds MSC's arguments unavailing, and that, as the government argues, MSC's claims that the RFQ should have been cancelled and reissued and that the BPA awarded to Grainger should be set aside have been waived. Here, MSC knew of the alleged conflict between the GSA policy changes and the RFQ before the BPA was awarded to Grainger. MSC was notified that GSA intended to stop supporting outsourcing from 51V contracts on May 31, 2018. Pl.'s Reply at 13 n.8. The May 31, 2018 email stated that "the determination was made that the 4PL program is no longer in a position to support the outsourcing element of MAS 51V" and that "[a]ll items that the vendor wishes to continue selling through the 4PL program have been added to the BPA level (i.e., to SIN 105-001), must be added to the contractor's over-arching MAS 51V schedule by October 1, 2018." Grainger's MJAR Ex. A. The court finds that the language in the May 31, 2018 email was definite and provided adequate notice to MSC that outsourcing would soon be prohibited.  MSC received a second notice regarding GSA's outsourcing prohibition on July 2, 2018. Pl's Reply at 13. These documents establish that MSC knew of the alleged conflict between the 51V policy change and the terms of the RFQ as early as six weeks in advance of the BPA award. It is because MSC knew of the

potential conflict between the prohibition on outsourcing that would soon be added to 51V contracts and the provision for outsourcing in the RFQ before the BPA was awarded, the court finds that MSC's claims regarding this potential conflict have been waived under *COMINT*. Under *COMINT*, "[u]nless the basis for the protest becomes apparent later than ten days before the award," the protester will not be permitted to wait until after the award. 700 F.3d at 1383.

For these same reasons, MSC's claim that the BPA award must be set aside because it was unlawful for GSA to award the BPA with the intent to materially modify the award or change the scope of the award is rejected. MSC could have brought a claim before the award date because MSC knew all the information pre-award that MSC relied on when it filed its complaint on July 25, 2018 regarding the change to 51V contracts. Therefore, MSC's claim that the BPA must be set aside because it was awarded with the intent to change by incorporation of 51V contracts, is also waived under *COMINT*.

Because MSC's challenge to the BPA award rests on the conflict between the RFQ and the 51V policy change, the court finds that MSC's reliance on *Sotera Defense* to suggest that MSC did not have to raise its objection to the RFQ before award is misplaced. The court in *Sotera Defense* distinguished its facts from cases where a protestor "possessed knowledge of an alleged procurement defect, that faced a fixed deadline for protesting that defect . . . and that waited for the results of an evaluation process before protesting the alleged defect." 118 Fed. Cl. at 255. In *Sotera Defense*, the government alleged that the plaintiff waived its claim protesting "the Army's decision to re-evaluate proposals." *Id.* at 247-48. There was "no solicitation term [] at issue." *Id.* at

33

253. And the decision to re-evaluate proposals did not create a defect in the original solicitation. *Id.* In contrast, MSC's "objects to a solicitation – namely, the outsourcing requirements and related evaluation criteria in the RFQ that are no longer applicable and, in fact, conflict with the underlying Schedule 51V contracts." Pl.'s MJAR at 15; *id.* at 27 ("The RFQ is, therefore, contrary to law and cannot properly form the basis for the award of a BPA.").[12]

The court also finds MSC's argument that its claim was not ripe until after the award is similarly without merit. MSC argues that any claim brought prior to the award would be premature because "MSC had every reason to assume the Agency would *not* take the improper course and proceed to contract award without correcting the solicitation." Pl.'s Reply 14. In support of this argument, MSC cites several GAO decisions where the government dismissed protests to solicitations as premature. *Id.* (citing *MINACT, Inc.*, B-414615, July 12, 2017, 2017 CPD ¶221 at 4; *Lockheed Martin Aeronautics Co.*, B-298626, Nov. 21, 2006, 2006 CPD ¶177 at 7-8). Neither of the cited decisions are applicable here.[13]

---

[12] Similarly, MSC's reliance on *Northeast Construction* is misplaced. In *Northeast Construction*, the plaintiff alleged that *COMINT* narrowed the holding in *Blue & Gold* by permitting any challenges to the solicitation "brought after the due date for proposals but before contract award." 119 Fed. Cl. at 609. The court then clarified that *COMINT* only opened up the period after the deadline to submissions to protests that could not have been brought earlier due to a change in the solicitation after the deadline to submissions. *Id.* at 610-11.

[13] In *MINACT*, the protestor was contesting a solicitation that had not even been issued. *Minact*, B-414615, ¶177 at 7-8. MSC however, is protesting and could have protested the same RFQ that was issued in January 23, 2018. In *Lockheed Martin*, the protestor anticipated changes when contracting officer stated that "the Army does not anticipate material changes to the solicitation's requirements." *Lockheed Martin Aeronautics Co.*, B-298626, Nov. 21, 2006, 2006 CPD ¶177 at 4. Therefore, the protestor's assertion of anticipated changes were unripe in light of assertions by the government that those very same anticipated changes would not occur. In contrast, MSC had

The court finds that the protest would not have been premature because GSA communications to 51V contract holders, like MSC, provided sufficient notice that outsourcing would no longer be allowed under the 4PL program at issue in the subject solicitation.[14] GSA stated in its email on May 31, 2018 that "the determination was made that the 4PL program is no longer in a position to support the outsourcing element of MAS 51V." Grainger's MJAR, Ex. A at 2. The email stated that "[b]eginning on October 1, 2018, items cannot be sold through the vendors' 4PL BPA unless the item has been added . . . to the contractor's over-arching 51V schedule." *Id.* Further, in GSA's July 2, 2018 announcement, GSA definitively stated that "[o]utsourcing will be removed" under the 51V program. Pl.'s MJAR, Ex. C at 13.

In addition, MSC was put on notice that GSA's decision regarding outsourcing would have immediate legal consequences. In its announcement on July 2, 2018, GSA clarified that the decision to remove outsourcing was related to a different bid protest sustained by the GAO. Pl.'s MJAR, Ex. C at 5 (citing *Savannah Cleaning Systems, Inc.* B-415817, Mar. 27, 2018). In oral argument, MSC admitted that, because of these

---

evidence of changes GSA intended to make to 51V contracts.

[14] Indeed, in cases cited by the parties that address the issue of granting an award with the intent to materially modify the award or changing the scope of the award in a bid-protest context, the protestor could not have brought a pre-award challenge because the protestor had no reason to know there would be a contract modification. *AT&T Communications, Inc. v. Wiltel, Inc.*, 1 F.3d 1201, 1204 (Fed. Cir. 1993) (contract awarded in 1988 and modifications made in 1992); *Treadwell Corp. v. United States*, 133 Fed. Cl. 371, 378-79 (contract awarded July 13, 2016 and protester learned of the modification on December 7, 2016); *Glob. Comput. Enters., Inc. v. United States*, 88 Fed. Cl. 350, 389-91 (2009) (contract awarded August 2007 and protester learned of the modification on November 8, 2007); *Northrop Grumman Corp. v. United States*, 50 Fed. Cl. 443, 449-55 (2001) (contract awarded August 9, 1996 and protest concerned modifications occurring in April and September 2000).

documents, MSC knew the government intended to modify the Schedule 51V contracts but that GSA's intent was not final until the 51V contracts were modified in August 2018. Oral Argument 15:06:43-15:06:48. The question under *COMINT* is when the patent ambiguity became known before award. A review of the subject documents reveals that GSA was intent on changing the 51V contracts to preclude outsourcing on May 31, 2018. There was nothing uncertain about GSA's intent to modify the 51V contracts. Therefore, a protest by MSC was ripe for review before award and thus MSC's objection on this ground is waived.

Even if MSC's challenge to the RFQ could be heard, however, the court finds for the reasons that follow that MSC's argument fails on its merits. MSC argues that the change to 51V contracts warranted a new procurement because "the RFQ anticipates that GSA *will* require the vendor to supply outsourced items." Pl.'s Reply at 19. The government and Grainger argue that there is no conflict because under the RFQ provisions outsourcing is allowed only if GSA approves the outsourcing.  When reviewing GSA's decision not to cancel the solicitation, the court is "highly deferential[.]" *See Madison Servs., Inc. v. United States*, 92 Fed. Cl. 120, 125 (2010). Indeed, even a mistake in the solicitation must be "so excessive as to fall outside the decision-maker's ambit of discretion." *Cygnus Corp. v. United States*, 72 Fed. Cl. 380, 384 (2006), *aff'd*, 227 F. App'x 909 (Fed. Cir. 2007). Because the RFQ and BPA do not allow for outsourcing without GSA approval and grant GSA the discretion to decide how much outsourcing to permit, the court agrees that the RFQ, the awarded BPA, and 51V contract change on outsourcing are not in conflict. In addition, the court finds that MSC's

argument that GSA unlawfully awarded a contract with the intent to change that contract

is also without merit because, as the government explained at oral argument, the BPA

awarded to Grainger has not and will not change. 15:32:37-15:33:12. Only the underlying

51V contract will be changed. In such circumstances, even if MS''s arguments were not

waived, it is clear that it was not irrational for GSA to refrain from canceling the

procurement or changing the RFQ based on GSA's changes to the 51V contracts.

### 3.     Any Objections to Grainger's Ability to Meet the Requirements of the BPA Without Outsourcing Must Be Dismissed as a Question of Contract Administration

The government and Grainger next argue that to the extent MSC is challenging

Grainger's ability to meet its obligations under the BPA without outsourcing the claim

must dismissed because MSC's argument goes to issues of contract administration and

this court lacks jurisdiction over issues of contract administration under the bid protest

provisions of the Tucker Act. Grainger's MJAR at 27; Def.'s MJAR at 17 ("Matters of

contract administration . . . are not the proper subjects of suit brought under this Court's

bid protest jurisdiction in 28 U.S.C. § 1491(b)"); *see also Gov't Tech, Servs. LLC v.

United States*, 90 Fed. Cl. 522, 527 (2009) (citing *Dalton v. Sherwood Van Lines, Inc.*, 50

F.3d 104, 107 (Fed. Cir. 1995) ("The Federal Circuit has made it crystal clear that the

[Contract Disputes Act] is the 'exclusive mechanism' for the resolution of disputes

arising . . . in contract management."). Grainger argues that MSC's claim "whether

and/or how federal agencies can order outsourced items under the contract is now an

issue of contract administration between the two parties to the contract." Grainger's

MJAR at 27-8 (citing *TransAtlantic Lines LLC v. United States*, 126 Fed. Cl. 756, 759

(2016) ("once awarded a contract, objections to the terms of the contract are matters of contract administration that are properly brought as claims pursuant to" the CDA)).

Section 1491(b)(1) of the Tucker Act grants this court jurisdiction: "to render judgment on an action by an interested party objecting to a solicitation by a Federal agency for bids or proposals for a proposed contract or to a proposed award or the award of a contract or any alleged violation of statute or regulation in connection with a procurement or proposed procurement."

The statute's jurisdiction can be broken into three parts: "(1) pre-award protests (i.e., objections 'to a solicitation by a Federal agency for bids or proposals for a proposed contract' or award); (2) post-award protests (i.e., objections to 'the award of a contract'); and (3) any 'alleged violation of statute or regulation in connection with a procurement or a proposed procurement.'" *Sheridan Corp. v. United States*, 95 Fed. Cl. 141, 148 (2010) (citing 28 U.S.C. § 1491(b)(1)). The claimant must bring a "non-frivolous allegation of a statutory or regulatory violation in connection with a procurement." *Distributed Sol.'s., Inc. v. United States*, 539 F.3d 1340, 1345 n.1 (Fed. Cir. 2008).

In its motion MSC argues that the "[a]gency must modify the BPA immediately to prevent Grainger from engaging in illegal procurements for Warner Robins." Pl. MJAR at 31. MSC further argues that the contract must be "retroactively rewritten to meet the new terms of the Schedule 51V." *Id.* at 33. The court agrees with the government and Grainger that MSC's arguments regarding the awarded BPA are outside the court's bid protest jurisdiction and involve matters of contract administration that cannot be brought by MSC.

Whether Grainger will be able to comply with the BPA requirements given the change in 51V contracts, is a question that falls squarely within the ambit of contract administration. *Chapman Law Firm v. United States*, 63 Fed. Cl. 519, 529 (2005) ("the court is not persuaded that a deficiency by a contractor in meeting a bonding requirement after contract award, even if proven, would, in general, or in this case in particular, constitute a significant, prejudicial error in the procurement process") (internal quotation and citation omitted), *aff'd,* 163 F. App'x 889 (Fed. Cir. 2006) Claims associated with "the adjustment or interpretation of contract terms, or other relief relating to the contract" are governed by the CDA. *Todd Constr. L.P. v. United States*, 656 F.3d 1306, 1311 (Fed. Cir. 2011) (quoting 48 C.F.R. § 2.101). MSC cannot, as a third party, challenge the capacity of an awardee to fulfill the requirements of the award. Therefore, MSC's claim regarding Grainger's ability to comply with the BPA must be dismissed as outside this court's bid protest jurisdiction under Section 1491(b)(1).[15]

## CONCLUSION

For the foregoing reasons, the government and Grainger's motions for judgment on the administrative record with regard to Claim I are **GRANTED**, and the plaintiff's cross-motion is **DENIED**. The government and Grainger's motions to dismiss Claim II under RCFC 12(b)(1) are **GRANTED** and the plaintiff's motion for judgment on the administrative record is **DENIED**. The plaintiff's motion to supplement the

---

[15] Having concluded that all of MSC's claims regarding the award of the BPA based on changes to the 51V contracts must be dismissed for lack of jurisdiction the court does not have occasion to consider the government's alternative argument that MSC lacks standing to challenge the BPA on the grounds that it was eliminated from the competition.

administrative record is **DENIED**. Each party shall bear its own costs. The Clerk is directed to enter judgment accordingly.

   **IT IS SO ORDERED.**

s/Nancy B. Firestone
NANCY B. FIRESTONE
Senior Judge
